952 F.2d 31
 UNITED STATES of America, Appellee,
v.
Eddie PARKER, Gina Parker, Ira VanDyke, Leron Parker, Gigi
Smeido, also known as Gigi, also known as Fat Girl, James
McClendon, Juan Frank Delasantos, Al Richardson, Wayne
Holley, Michael Ladson, Vassel Fagon, Bruce Brown, Luis
Leon, Cheyenne Reyes, Shaun Whitehurst, Ira VanDyke, Defendants,
Gigi Smeido, also known as Gigi, also known as Fat Girl,
Defendant-Appellant.
 No. 289, Docket 91-1352.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 27, 1991.
Decided Dec. 11, 1991.
 
 Judith S. Lieb, Asst. U.S. Atty. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Keith D. Krakaur, Asst. U.S. Atty., of counsel), Brooklyn, N.Y., for appellee.
 Martin G. Fogelson, New York City, for defendant-appellant.
 Before TIMBERS, PIERCE and WALKER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Gigi Smeido appeals, from the judgment of the United States District Court for the Eastern District of New York (Wexler, J.), finding her in violation of probation.
 
 
 2
 On December 5, 1989, Smeido pled guilty to both counts of a two-count superseding information charging her with using a telephone to facilitate the distribution of cocaine and cocaine base, in violation of 21 U.S.C. § 843(b). The district court sentenced Smeido to time served and to one year of supervised release, and a special assessment of $100. The conditions of Smeido's probation, inter alia, prohibited her from excessive use of alcohol as well as the purchase, possession, use, or distribution of any narcotic or controlled substance.
 
 
 3
 On July 16, 1990, the Probation Department charged that Smeido had violated the terms of her probation by engaging in crack transactions while living at home with her mother. On July 27, 1990, the district court held a hearing at the conclusion of which it found that Smeido had sold crack cocaine on July 2, 1990 in violation of her probation. However, the district court did not revoke Smeido's probation. Later, noting that she was then incarcerated under a sentence of three to six years upon a subsequent New York State drug conviction, the district judge simply discharged her from probation as unimproved. Smeido now appeals from the district court's finding of a probation violation.
 
 
 4
 As a threshold matter, the government contends that Smeido's appeal is moot. Relying upon Lane v. Williams, 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982), the government argues that since Smeido has been discharged from probation, there is no longer a live controversy for this Court to resolve. The government further argues that Smeido's record of probation violation, and any potential future consequences that it may have with respect to her receiving parole from her state imprisonment, is insufficient to render the claim live. See Lane, 455 U.S. at 632-33, 102 S.Ct. at 1327-28. However, we do not think Lane compels a finding of mootness in this case, and we decline to find Smeido's appeal moot.
 
 
 5
 Lane is distinguishable from this case. The respondents in Lane were reimprisoned under state sentences for having violated parole and thereafter sought federal habeas corpus relief. They chose to attack only the parole component of their sentences as a breach of their plea agreements; they did not challenge the judicial findings that they had violated the terms of their parole. 455 U.S. at 624, 102 S.Ct. at 1323. The district court in Lane granted the habeas relief and the state appealed. By the time the appeal came before the Court of Appeals, however, the respondents had been released from state custody and their parole terms had expired. When the case finally reached the Supreme Court, it held that the Court of Appeals should have dismissed the case as moot. The Court reasoned that since the respondents had sought only specific enforcement of their sentences, and since the sentence terms had lapsed during the pendency of the case, there no longer existed a live controversy for a court to resolve. 455 U.S. at 631, 102 S.Ct. at 1326. The Supreme Court specifically stated, however, that had the prisoners in Lane directly attacked their convictions, their appeals would not have been moot. Id. at 630, 102 S.Ct. at 1326.
 
 
 6
 Our sister circuit courts applying Lane have read this distinction to be dispositive on the issue of mootness. The Seventh Circuit has recently stated that "[i]t is clear that the precise holding of Lane has no direct application" in a case where "the petitioner is attacking the underlying adjudication of her conduct as well as the sentence imposed." D.S.A. v. Circuit Court Branch 1, 942 F.2d 1143, 1147 (7th Cir.1991). See also Robbins v. Christianson, 904 F.2d 492, 494-95 (9th Cir.1990); United States v. Spawr Optical Research, Inc., 864 F.2d 1467, 1470 (9th Cir.1988), cert. denied, 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989); U.S. v. Maldonado, 735 F.2d 809, 812-13 (5th Cir.1984); U.S. v. Cooper, 725 F.2d 756, 757-58 (D.C.Cir.1984) (per curiam).
 
 
 7
 Furthermore, the discussion in Lane concerning collateral consequences--a discussion that restricts the spectrum of consequences to be considered in deciding whether a case has become moot--has been classified as dictum by one court, see Circuit Court, 942 F.2d at 1148, and narrowly applied by others. In cases where a convict directly attacks his or her conviction or finding of parole violation, courts have, as a general rule, considered a wider spectrum of collateral effects in deciding whether a case is moot. Thus, potentially negative effects on testimonial credibility, future bail adjustments, future criminal sentences, and potential employment discrimination have been found sufficiently injurious to sustain the vitality of a controversy. See e.g., Circuit Court, 942 F.2d at 1148-50 (testimonial credibility and negative ramifications in potential custody proceeding); Robbins, 904 F.2d at 494-95 (enhanced sentencing and employment discrimination); Maldonado, 735 F.2d at 812-13 (testimonial impeachment and bail ramifications).
 
 
 8
 Here, Smeido does not question her sentence, but rather directly attacks the substantive finding of her probation violation. A record of probation violation based on that finding is likely to influence the state parole authority to her detriment in connection with her present incarceration, see N.Y. Exec. Law § 259-i, and thus is likely to have collateral consequences that are neither speculative nor insignificant. We therefore find that her appeal is not moot.
 
 
 9
 Reaching the merits, however, we affirm the district court's finding that Smeido violated her probation. All that is required in a probation revocation hearing is that the district court be reasonably satisfied that the probationer violated the terms of her probation. See United States v. Lettieri, 910 F.2d 1067, 1068 (2d Cir.1990); United States v. Nagelberg, 413 F.2d 708, 709 (2d Cir.1969), cert. denied, 396 U.S. 1010, 90 S.Ct. 569, 24 L.Ed.2d 502 (1970). A district court's decision revoking probation will be reversed only if that decision constitutes an abuse of discretion. See United States v. Barth, 899 F.2d 199, 202 (2d Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 953, 112 L.Ed.2d 1042 (1991).
 
 
 10
 The district court heard testimony from Smeido's mother, who stated that she observed Smeido make a "hand exchange" in the hall outside of her apartment. Smeido's mother testified that she recognized that type of exchange as a drug transaction, common to dealers in her neighborhood. Furthermore, Smeido made the hand exchange with a man who Smeido's mother claimed was a known "crack head." Smeido's mother also testified that Smeido had been conversing with at least four other known drug traffickers, and that Smeido had been using alcohol while living at home. Smeido's attorney engaged in limited cross examination of Smeido's mother at the probation violation hearing. Considering this record, we cannot say that the district court abused its discretion in finding that Smeido violated the terms of her probation.
 
 
 11
 Accordingly, the district court's judgment holding Smeido in violation of her probation is affirmed.